UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ROP, *et al.*,                     )
                          Plaintiffs,      )
                                           )        No. 1:17-cv-497
-v-                                        )
                                           )        Honorable Paul L. Maloney
FEDERAL HOUSING FINANCE AGENCY, *et al.*,  )
                          Defendants.       )
                                           )

## OPINION AND ORDER

This lawsuit is one of several filed around the country involving shareholders seeking to undo a conservatorship. Most, if not all, of the other lawsuits have been resolved in favor of the defendants. Several motions remain pending here. Defendant Federal Housing Finance Agency filed a motion for judgment on the pleadings (ECF No. 99). Defendant Department of Treasury also filed a motion for judgment on the pleadings (ECF No. 101). Plaintiffs filed a motion for leave to file a second amended complaint (ECF No. 106). The court will grant the motions for judgment on the pleadings and will deny Plaintiffs' motion for leave to amend the complaint.

I.

Plaintiffs own common stock in the Federal National Mortgage Association (Fannie Mae) and or the Federal Home Loan Mortgage Corporation (Freddie Mac). Plaintiffs filed this lawsuit in June 2017 and filed an amended complaint on July 27, 2017 (ECF No. 17 Compl.). Other shareholders filed similar lawsuits in other federal district courts. In these lawsuits, shareholders seek to undo a conservatorship of Federal Housing Finance Agency

(FHFA) over Fannie Mae and Freddie Mac and also seek to undo an amendment to a stock agreement that was part of the conservatorship.

A.

Multiple courts have issued opinions summarizing the background and giving context the events leading to these lawsuits including this court, *Rop v. Fed. Hous. Fin. Agency*, 485 F. Supp. 3d 390 (W.D. Mich. 2020); the United States Supreme Court, *Collins v. Yellen*, 594 U.S. 220 (2021); the District of Columbia Circuit Court, *Perry Capital, LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017); the Sixth Circuit, *Rop v. Fed. Hous. Fin. Agency*, 50 F.4th 562 (6th Cir. 2022); and the Eighth Circuit, *Bhatti v. Fed. Hous. Fin. Agency*, 15 F.4th 848 (8th Cir. 2021). The Fifth Circuit has issued four opinions: *Collins v. Mnuchin*, 896 F.3d 640 (5th Cir. 2018); *Collins v. Mnuchin*, 938 F.3d 553 (5th Cir. 2019) (en banc); *Collins v. Yellen*, 27 F.4th 1068 (5th Cir. 2022) (en banc); and most recently *Collins v. Dept. of the Treasury*, 83 F.4th 970 (5th Cir. 2023). At least eight shareholder lawsuits were filed in the Court of Federal Claims, which were consolidated for the purpose of an appeal. *See Fairholme Funds, Inc. v. United States*, 26 F.4th 1274 (Fed. Cir. 2022). This court and the parties are well versed in the events leading to the creation of the FHFA, the conservatorship, and the Third Amendment. The court includes a brief discussion here for context.

Congress created Fannie Mae and Freddie Mac at different times but with similar purposes; both entities purchase mortgage loans from lenders, bundle the loans into mortgage-backed securities, and sell those securities to investors. In 1968, Congress made Fannie Mae a publicly traded corporation and did the same for Freddie Mac in 1989. In 2007 and 2008, the economy in this country fell into a recession in large part because of a

decline in the housing market.  Leading up to the recession, Fannie Mae's and Freddie Mac's mortgage portfolios accounted for nearly half of the mortgage market in this country and were valued around $5 trillion.  In 2008 when the housing market bubble burst, Fannie Mae and Freddie Mac "lost more that year that they had earned in the previous 37 years combined." *Collins*, 594 U.S. at 228. The recession and sharp decline in the housing market pushed the two companies near default.

Congress attempted to address the housing situation in part by passing the Housing and Economic Recovery Act of 2008 (HERA), which created the FHFA.  HERA provided for a single Director to oversee the FHFA, who serves for a five-year term and who could be removed by the President only for cause.  HERA established that Fannie Mae and Freddie Mac were regulated entities subject to the FHFA.  HERA authorized the Director to appoint FHFA as either conservator or receiver for Fannie Mae and Freddie Mac and granted FHFA broad powers over regulated entities.

On September 6, 2008, the FHFA Director exercised this authority and placed Fannie Mae and Freddie Mac into conservatorship. The Director then entered into Senior Preferred Stock Purchase Agreements (Stock Agreements) with the two entities and committed the Department of Treasury to invest $100 billion into both Fannie Mae and Freddie Mac. In exchange, the Treasury received one million senior preferred shares in each company.  The senior preferred shares came with a variety of entitlements and priorities over all other stockholders.   "It quickly became clear, however, that Fannie and Freddie were in a deeper financial quagmire than first anticipated."  *Rop,* 50 F.4th at 567 (quoting *Perry Capital,* 864 F.3d at 601).  "Within a year, Fannie Mae's and Freddie Mac's net worth

3

decreased substantially, and it became clear that Treasury's initial capital commitment would prove inadequate." *Collins*, 594 U.S. at 232.  As a result, the Director made several amendments to the Stock Agreements.  The Third Amendment became effective on August 17, 2012.

The Third Amendment included several significant changes from the earlier amendments.  First, the amendment replaced the fixed dividend formula for calculating the quarterly dividend payments owed to the Treasury for the senior preferred stock.  "If the net worth of Fannie Mae or Freddie Mac at the end of the quarter exceeded the capital reserve, the amendment required the company to pay *all of the surplus* to Treasury."  *Collins*, 594 U.S. at 234.  As a result, the two entities would not be able to accrue and retain capital.  *Id.* This dividend payment formula has been referred to as a "net worth sweep."  *Id.* at 227.  The first two years of the Third Amendment, 2013 and 2014, the new formula resulted in Fannie Mae and Freddie Mac "transferring immense amounts of wealth to Treasury." *Collins*, 594 U.S. at 234.  In 2013, the two companies paid Treasury over $130 billion in dividend and in 2014 they paid Treasury another $40 billion.  *Rop*, 50 F.4th at 568.  The two companies continued to pay dividends in 2015 and 2016, but at lower amounts, approximately $16 billion in 2015 and $15 billion in 2016. *Collins*, 594 U.S. at 234.

### B.

This lawsuit and the other lawsuits were filed to challenge, in part, the changes made in the Third Amendment to the Stock Agreements.  The lawsuit filed in the Southern District of Texas proceeded more quickly than the others and ultimately made its way to the United States Supreme Court.  The Court rejected most of the challenges to actions of the Director.

Justice Alito, writing for the majority, provided the following succinct summary of the outcome.

> We hold that the shareholder's statutory claim is barred by [HERA], which prohibits courts from taking "any action or affect the exercise of the powers or functions of the Agency as conservator." § 4617(f). But we conclude that the FHFA's structure violates the separate of powers, and we remand for further proceedings to determine what remedy, if any, the shareholders are entitled to receive on their constitutional claim.

*Collins*, 594 U.S. at 227-27. In rejecting the statutory claim, the Court found that the Third Amendment fell within the scope of FHFA's authority as a conservator. *Id.* at 237-42.

The Court held that the President's limited ability to remove the Director of the FHFA violated the separation of powers doctrine. *Id.* at 250-56. The Court then addressed the nature of the relief available to the shareholders. Because the Third Amendment had been replaced by the Fourth Amendment in 2021, the shareholders could only seek retrospective relief, not prospective relief. *Id.* at 244. And, the shareholders could not establish a constitutional injury from the adoption of the Third Amendment. An *acting* Director adopted the Third Amendment, an individual who "was removable by the President at will." *Collins*, 594 U.S. at 246. As a result, the shareholders could not ask a court to set 'aside the third amendment in its entirety." *Id.* at 257. Nor could the shareholders obtain a remedy based on the continued implementation of the Third Amendment by the subsequent Directors because they were properly appointed. *Id.* at 257-58. "As a result, there is no reason to regard any of the actions taken by FHFA in relation to the third amendment as void." *Id.*

The Court left open the *possibility* that the shareholders could establish that the unconstitutional removal limitation caused them some financial harm.

> Although an unconstitutional provision is never really part of the body of governing law (because the Constitution automatically displaces any conflicting statutory provision from the moment of the provision's enactment), it is still possible for an unconstitutional provision to inflict compensable harm. And the possibility that the unconstitutional restriction on the President's power to remove a Director of the FHFA could have such an effect cannot be ruled out. Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with the actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 259-60.

Following the Court's opinion in *Collins*, the plaintiffs in two of the lawsuits filed amended complaints attempting to plead a cause of action that would fit within the hypothetical scenario described by the Supreme Court. The district courts rejected those amended complaints and granted motions to dismiss filed by the defendants. *Collins v. Yew*, 642 F. Supp. 3d 577 (S.D. Tex. 2022); *Bhatti v. Fed. Hous. Fin. Auth.*, 646 F. Supp. 3d 1003 (D. Minn. 2022). The Fifth Circuit affirmed the dismissal of the amended complaint. *Collins v. Dept. of the Treasury*, 83 F.4th 970 (5th Cir. 2023). So too did the Eighth Circuit. *Bhatti*, 97 F.4th 225 (8th Cir. 2024).

## C.

This lawsuit has proceeded more slowly than the lawsuits filed in other districts. As this court described in the 2020 opinion, Plaintiffs' amended complaint pled five causes of action. *Rop*, 485 F. Supp. 3d at 916. In count 1, Plaintiffs allege the structure of the FHFA

6

violates the Vesting Clause of Article II of the Constitution.  Specifically, a single director with removal limitations violates the President's removal authority.  In count 2, Plaintiffs plead that the structure of the FHFA violates the Constitution's separation of powers. HERA, as written, eliminates oversight of the FHFA by any of the three branches of government.  In count 3, Plaintiffs alleges that the Third Amendment was invalid because the acting Director was not appointed and did not serve in a constitutionally acceptable manner.  Plaintiffs describe their cause of action as a violation of the Appointments Clause. In count 4, Plaintiff plead the Third Amendment was invalid because the FHFA approved it while exercising impermissible legislative power delegated impermissibly by Congress. Finally, in count 5, Plaintiffs plead that if the FHFA acted as a nongovernmental entity when it approved the Third Amendment, then it impermissibly exercised legislative power. Plaintiffs seek both prospective and retrospective relief.  They request an injunction against Defendants from taking any additional action under the Third Amendment.  Plaintiffs also ask the court to order the Treasury to return to Fannie Mae and Freddie Mac "all dividend payments made during the New Worth Sweep or, alternatively, recharacterizing such payments as a pay down of the liquidation preference and a corresponding redemption of Treasury's Government Stock rather than mere dividend" (Compl. PageID.271).

In 2020, this court granted motions to dismiss filed by Defendants (ECF No. 66 and 67). In that opinion, and relevant to counts 1 and 2, this court concluded that while the limitation on the President's ability to remove the Director of the FHFA would likely be unconstitutional, the violation was not connected to Plaintiffs' injuries.  *Rop*, 485 F. Supp. at

940.  This court also concluded that count 3, the alleged violation of the Appointments Clause, presented a nonjusticiable issue.  *Rop*, 485 F. Supp. 3d at 940-43.

The United State Supreme Court issued its opinion in *Collins* on June 23, 2021.

In October 2022, the Sixth Circuit issued its opinion reversing in part and remanding the lawsuit.  The circuit court disagreed that the alleged violation of the Appointments Clause presented a nonjusticiable issue.  *Rop*, 50 F.4th at 569.  The circuit court then found that the acting Director was not serving in violation of the Appointments Clause when he signed the Third Amendment.  *Id.* at 569-70.  Turning back to the limitation on the removal of the Director, the circuit court opted to following the holding in *Collins* and remanded the action "to determine whether the unconstitutional removal restriction inflicted harm on shareholders."  *Id.* at 574.

The circuit court addressed a few relevant arguments relevant to its decision to remand.  First, the court rejected the government's argument that Plaintiffs sought only prospective relief.  *Id.* at 576.  The court noted that Plaintiffs' prayers for relief included a retrospective request for a return of the dividend payments made under the Third Amendment.  *Id.* The court also found that the request for retrospective relief was "tethered to shareholders' argument that [HERA]'s removal restriction is unconstitutional."  *Id.*  Next, the court acknowledged, as did the majority and two justices in concurrence in *Collins*, the difficulty that shareholders face attempting to prove their claim.  *Id.*  Nevertheless, the Sixth Circuit opted to follow the Fifth and the Eight Circuits and remanded the matter to the district court.  *Id.* at 576-77.

Plaintiffs filed a petition for a writ of certiorari, which the United States Supreme Court denied in June 2023 (ECF Nos. 73 and 74).

In August 2023, Plaintiffs filed a motion for leave to file an amended complaint (ECF No. 79).  The court denied the motion in December 2024, finding that the proposed amendments to the complaint exceeded the limited scope of the remand order (ECF No. 87).

Then in March 2025, Defendants filed motions for judgment on the pleadings (ECF No. 99 and 101).  And on April 1, 2025, Plaintiffs filed a second motion for leave to file an amended complaint (ECF No. 106).  The court now turns to these motions.

## II.

Defendants filed Rule 12(c) motions for judgment on the pleadings seeking to dismiss this lawsuit.  Plaintiffs' amended complaint functions as the operative pleading (ECF No. 17 Compl.).

## A.

A motion for judgment on the pleadings under 12(c) of the Federal Rules of Civil Procedure uses the same standards as a motion to dismiss under Rule 12(b)(6).  *Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007).  "'For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion will be granted only if the moving party is nevertheless clearly entitled to judgment.'"  *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012) (quoting *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 549 (6th Cir. 2008)).  The court need not accept the plaintiff's legal conclusions or unwarranted factual inferences.

*Commercial Money Ctr. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007)). "To withstand a Rule 12(c) motion for judgment on the pleadings, 'a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.'" *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (*Commercial Money Ctr.*, 508 F.3d at 336).

Rule 12(b)(6) provides a vehicle for a defendant to test whether a plaintiff pleads a plausible claim. *See Heyward v. Cooper*, 88 F.4th 648, 653 (6th Cir. 2023); *Long v. Insight Commc'ns of Cent. Ohio*, 804 F.3d 791, 794 (6th Cir. 2015). When resolving motions to dismiss brought under Rule 12(b)(6), a court generally considers only the complaint and attached exhibits when the complaint refers to those exhibits and which are central to the plaintiff's claims. *Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024). The court must accept as true all well-pled factual allegations in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024). A plaintiff pleads a facially plausible claim when the well-pled facts allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 887 (6th Cir. 2020) (quoting *Ashcroft*, 556 U.S. at 678). The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original).

B.

Both Defendants raise the same argument in their motions; the complaint does not plead facts to state a viable claim based on the guidance in *Collins* and from the Sixth Circuit in its order for remand.  The FHFA summarizes its arguments as follows: "In short, the first amended complaint puts forward no facts that would provide any underpinning for the very limited kind of claim that the Supreme Court, and by extension Sixth Circuit, hypothesized could be grounds for further litigation" (ECF No. 100 at 9 PageID.2240).  The Treasury asserts the same; Plaintiffs have "clearly not plead such a claim" to show how the removal restrictions affected the actions of any Senate-confirmed FHFA Director (ECF No. 102 at 5 PageID.2256).

Defendants are entitled to dismissal of Plaintiffs' remaining claim or claims.  Plaintiffs generally question the implementation of the Third Amendment by attacking HERA and the structure of the FHFA. The Supreme Court in *Collins* and the Sixth Circuit in *Rop* have rejected those sort of claims.  Plaintiffs complaint does not plead any facts that would support a cause of action for retrospective relief as hypothesized by *Collins.*

Plaintiffs' response does not persuade the court otherwise.  Plaintiffs argue that the Sixth Circuit "has already held that Plaintiffs' complaint seeks retrospective relief that is tethered to the unconstitutional removal restriction, as required by *Collins,*" citing *Rop,* 50 F.4h at 576 (ECF No. 113 at 4 PageID.2539).  But that sentence must be placed in context. The circuit court was rejecting Defendants' argument that Plaintiffs were advancing a new claim for prospective relief on appeal.  *See Rop,* 50 F.4th at 576.  The court disagreed and pointed to the portion of the complaint that sought retrospective relief.  Similarly, the Sixth

Circuit wrote in a footnote that Plaintiffs' claim that they are entitled to relief because the removal restriction is unconstitutional "is properly reserved." *Rop*, 50 F.4th at 575 n.6. The circuit court merely concluded that Plaintiffs had pled that the removal restriction was unconstitutional and had sought retroactive relief tied to that allegation. As a result, the circuit court declined to dismiss the action and remanded the matter to this court. The Sixth Circuit did not hold that Plaintiffs pled a plausible claim that would survive a Rule 12 motion.

Plaintiffs attempt to show that the complaint does plead sufficient facts to state a claim consistent with the scenario hypothesized in *Collins.* Plaintiffs do plead facts that would be necessary for a plausible claim. But they do not plead sufficient facts for a plausible claim. The complaint does not plead facts to establish that any President wanted to terminate a Director who enforced the Third Amendment but could not do so because of the limitation on removal. Nor does the complaint plead any facts that would permit such an inference. This conclusion should not come as a surprise. Plaintiffs filed this complaint about four years before the Supreme Court issued *Collins.*

The court finds that the complaint fails to plead facts to support a claim for retrospective relief sufficiently tied to the removal restriction. The court will grant Defendants' motions for judgment on the pleadings.

### III.

Plaintiffs filed a motion for leave to amend their complaint (ECF No. 106). Plaintiffs include an argument about their motion as part of their opposition to the motions for judgment on the pleadings.

A.

For Plaintiffs' motion, the court must consider both Rule 15 and Rule 16. *See Leary v. Daeschner*, 349 F.3d 888, 907-09 (6th Cir. 2003). When a court has issued a case management order establishing deadlines and the relevant deadline for amending a complaint has passed, the moving party must first establish good cause to amend the scheduling order and the court must consider any prejudice to the non-moving party. *Id.* at 909; *see* Fed. R. Civ. P. 16(b)(4). To show good cause for failing to meet the deadline in the scheduling order, Plaintiffs must establish "that despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 908. And when a plaintiff seeks to plead a new cause of action, or transform an existing cause of action into something new, the nonmoving party will be prejudiced. *Id.*

Plaintiffs have not established good cause under Rule 16. Plaintiffs do not address Rule 16 in their motion. Plaintiffs filed their complaint in 2017, several years before the Supreme Court issued *Collins*. The Sixth Circuit remanded this lawsuit in light of the *Collins* opinion. Following the remand, the court instructed Plaintiffs to file a motion to amend the complaint by August 11, 2023 (ECF No. 78), which they did (ECF No. 79). The proposed amended complaint added factual allegations attempting to plead a claim under the *Collins* opinion but also added a new claim under the Appropriations Clause (ECF No. 79-1). In December 2024, this court denied the motion because the additional Appropriations Clause claim exceeded the scope of the remand (ECF No. 87). The latest deadline for filing an amended complaint has expired.

13

B.

1.

Only after satisfying the demands of Rule 16 should the court consider Rule 15, which states that leave to amend a complaint should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). But the "dictate that leave to amend shall be freely given" requires the moving party to exercise "due diligence." *Spadafore v. Gardner*, 330 F.3d 849, 853 (6th Cir. 2003). The Sixth Circuit has held that when considering leave to amend a complaint, a court may consider several factors: undue delay or bad faith in filing the motion, repeated failures to cure previously-identified deficiencies, futility of the proposed amendment, and lack of notice or undue prejudice to the opposing party. *Knight Capital Partners Corp. v. Henkel AG & Co.*, 930 F.3d 775, 786 (6th Cir. 2019). A proposed amendment to a complaint would be futile if it cannot withstand a Rule 12(b)(6) motion to dismiss. *Grand Traverse Band of Ottawa and Chippewa Indians v. Blue Cross Blue Shield of Michigan*, 146 F.4th 496, 515 (6th Cir. 2025). The decision to grant or to deny a motion for leave to amend a complaint falls within the court's discretion. *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 617 (6th Cir. 2024).

2.

The parties disagree whether the proposed amended complaint would be futile. Plaintiffs rely, in large part, on a letter sent from President Trump to Senator Rand Paul dated November 11, 2021 (ECF No. 106-1 PageID.2326). The President appears to address a conversation with Senator Paul and, without naming the opinion, refers to the Supreme Court's opinion in *Collins*.

14

> In a recent ruling, the Supreme Court has recognized that my Administration was denied the ability to oversee the work of FHFA in violation of the Constitution.  The Supreme Court's decision asks what I would have done had I controlled FHFA from the beginning of my Administration, as the Constitution required. From the start, I would have fired former Democratic Congressman and political hack Mel Watt from his position as Director and would have ordered FHFA to release these companies from conservatorship.

(*id.*).  Indeed, in the proposed complaint, Plaintiffs cite this letter and plead that "[b]ut for the removal restriction, President Trump would have fired Director Watt in January 2017 and nominated someone else to serve as FHFA Director" (ECF No. 106-1 ¶ 47 PageID.2293).  Plaintiffs include in their proposed complaint various statements made by members of the Trump Administration and statements made in documents issued by the Administration.  Defendants argue that several courts have already rejected similar proposed complaints as entirely speculative.

The court concludes the proposed amendment would be futile.  Notably, Plaintiffs cannot plead that President Trump ever made public statement about his displeasure with the actions of a Director of FHFA or a contemporaneous statement that he would remove the Director if the removal limitation did not stand in his way.  *See Collins*, 594 U.S. at 259-60.  The letter sent to Senator Paul was not such a public statement. And, the letter was issued after President Trump left office, not contemporaneous with his first term.  Most of the statements made by members of the Trump Administration cited in the complaint, as well as most of the documents referenced in the complaint, merely set forth policy goals (desires or aspirations), not specific plans to achieve those goals.  The allegations in the complaint might set forth possibilities.  But the Supreme Court has indicated that a plaintiff must plead facts to show a plausible claim, not merely a possible claim.  *See Twombly*, 550

U.S. at 560-63 (explaining that the "no set of fact" language in *Conley v. Gibson* is a phrase best forgotten as an incomplete pleading standard).

This outcome should not come as a surprise to Plaintiffs. The court had concerns that, with the benefit of hindsight and the reasoning of several courts, Plaintiffs would have provided additional facts in this proposed complaint to avoid the result in *Collins* and *Bhatti*. The court reviewed the amended complaint filed in those cases after remand. The court notes that the same Washington D.C. law firm and the same attorneys with that firm represented the plaintiffs in *Collins* in the Southern District of Texas, and *Bhatti* in the District of Minnesota, and in *Wazee Street Opportunities Fund IV v. FHFA*, No. 18-3478 (E.D. Pa.). That same firm and the same attorneys represent the plaintiffs in this lawsuit. The relevant complaints in *Collins*, No. 4:16cv3113 (S.D. Tex.) (ECF No. 80 filed June 3, 2022), and in *Bhatti*, No. 17cv2185 (E.D. Pa.) (ECF No. 87 filed Jan. 26, 2022) are virtually identical to the proposed complaint filed in *Wazee Street Opportunities Fund* (ECF No. 58-1 filed July 1, 2024) and in this lawsuit. The court finds the reasons to dismiss the complaints in those cases persuasive and sees no reason to reach a different outcome.

In addition to the concerns identified by the district courts, the Fifth Circuit and the Federal Circuit identified other problems with that would apply to the proposed complaint here. The Fifth Circuit noted that the plaintiffs in *Collins* alleged (as the proposed complaint here does) that the Trump Administration had a five-step plan. *Collins*, 83 F.4th at 983. The court then held that the complaint "contains no well-pleaded facts demonstrating the five-step plan would have been completed if President Trump had and extra two years with" his appointed Director in charge of FHFA. *Id.* In one of its earlier opinions, the Fifth

16

Circuit found that President Trump was able appoint an acting Director and "[h]e never questioned the propriety of the Net Worth Sweep and reaffirmed the previous administration's position." *Collins*, 938 F.3d at 594. The Federal Circuit found that the President has always been able to have adequate oversight concerning the Net Worth Sweep because the conservatorship was a joint enterprise between the FHFA and the Department of the Treasury. *Fairholme Funds*, 26 F.4th at 1305 (citing *Collins*, 938 F.3d at 594 and *Collins*, 141 S. Ct. at 1802 (Kagan, J. concurring in part)). "Presidents Obama and Trump could have directed the Treasury Secretary to refuse to continue the net worth sweep at any time, but did not do so." *Id.*

The court finds that Plaintiffs have not satisfied the good cause requirement in Rule 16 and the proposed amended complaint would be futile. The court will deny Plaintiffs' motion for leave to amend.

## ORDER

For the reasons set forth in the accompanying Opinion, the court **GRANTS** Defendants' motion for judgment on the pleadings (ECF Nos. 99 and 101) and **DENIES** Plaintiffs' motion for leave to file an amended complaint (ECF No. 106). This is a final order that ends the lawsuit and a separate judgment will issue. **IT IS SO ORDERED.**

Date:____March 11, 2026____                    /s/  Paul L. Maloney____
                                               Paul L. Maloney
                                               United States District Judge